**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000452**
**27-FEB-2025**
**07:56 AM**
**Dkt. 64 SO**

NO. CAAP-23-0000452

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

C.M., Plaintiff-Appellee,
v.
E.K., Defendant-Appellant.

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(CASE NO. 5DV131000149)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth, and McCullen, JJ.)

Defendant-Appellant E.K. (**Mother**) appeals from the June 30, 2023 Consolidated and Superseding Order of: 1) Amended Stipulated Order Regarding Private School and Findings and Order Granting in Part Plaintiff's Motion to Suspend Child Support and for Related Relief, filed May 11, 2023 and 2) Order Granting in Part Plaintiff's Motion to Suspend Child Support and for Related Relief filed on August 6, 2021, filed on May 26, 2023 (**Consolidated and Superseding Order**) entered by the Family Court of the Fifth Circuit (**Family Court**)[1] in favor of Plaintiff-Appellee C.M. (**Father**).

---

[1]      The Honorable Stephanie Char presided.

Mother raises five points of error on appeal, contending that the Family Court: (1) clearly erred in the Consolidated and Superseding Order's Findings of Fact (**FOFs**) 4, 6, 15, 16, 17, and 20, and erred in Conclusions of Law (**COLs**) 3, 4, 5, and 7;[2] (2) erred in deviating from the Hawaiʻi Child

---

[2]  The challenged FOFs are as follows:

4)   The children will spend equal time with each parent during school breaks and holidays.

. . . .

6)   An exception to the [Guidelines] in accordance with this order is warranted on account that the minor children spend the school year living on the Oahu campus of Kamehameha Schools and only return to reside with their parents on an equal timesharing basis during major holidays and school breaks. Kamehameha Schools pays the substantial majority of the children's room and board and is, therefore, covering the majority of the expenses towards which a parents' [sic] child support is intended.

. . . .

15)  The court does not find it credible that mother gives [MM] $1,000 a month.

16)  Because of her academic achievements and financial aid, up to this point, the majority of her post-high school education is paid for, with the exception of books, which father helped with when asked.

17)  Based on [MM's] testimony, which the court found to be credible, her income more or less zeros out at the end of the month to pay for her reasonable living expenses.

. . . .

20)  The court did not have sufficient evidence to determine the amount of arrearage, if any, Father has in child support.

The challenged COLs (which are mixed FOFs and COLs) are as follows:

3)   Beginning August 1, 2022, Father shall pay child support in the amount he presently pays into each minor child's bank account- i.e., $100/month into each minor child's bank account. Father shall provide a receipt to Mother by the 6th day of every month showing his deposit of said amounts into the

(continued...)

Support Guidelines (2020) (**Guidelines**) as to the parties' minor children, KM and HM; (3) erred in deviating from the Guidelines as to the parties' older child (**MM**); (4) erred in ordering that Father's child support arrearages be zeroed out by the Child Support Enforcement Agency (**CSEA**); and (5) erred in overruling Mother's objections to questions regarding her written financial statements, and subsequently finding Mother not credible concerning the amount Mother claimed she gave monthly to MM.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's points of error as follows:

The Consolidated and Superseding Order arises in the first instance out of (1) Father's August 6, 2021 Motion to

_____

[2](...continued)
children's bank accounts. An Order Terminating Child Support shall be filed forthwith. The amount and method of payments of Father's child support arrearage, if any, shall be determined once property division has been ultimately decided, and the CSEA shall zero out any child support arrearage presently, if any, owed from Father to Mother.

4) Based on the findings of this Court, per the testimony of the parties, the Court is finding that there does exist Exceptional Circumstances as to [MM] that justify a deviation from the Child Support Guidelines § III(A)1 and 2.

5) Therefore, the Court will deviate from the [Guidelines] and order Father to pay $250 a month directly to [MM], effective as of January 2023. Father is to make arrangements with [MM] within one week to determine how these payments are to be made.

. . . .

7) The issue of child support arrearages, if any, shall be determined at a further hearing.

Suspend Child Support and for Related Relief (**Motion to Suspend Support**) and (2) Mother's August 30, 2021 Motion and Declaration for Post-Decree Relief (**Motion for Relief**).

In the Motion to Suspend Support, Father argued that the Family Court should suspend the $557.52 per month child support he pays Mother, "credit" child support payments he would otherwise pay Mother against the "balance of $203,672.27 due and owing" from Mother to Father, order that Father's child support arrearages are satisfied and credited against the $203,672.27 due and owing, and issue any further order to satisfy Mother's "debt" to Father in the amount of $203,672.27.

In the Motion for Relief, Mother argued that she should be awarded sole physical custody of the parties' children, child support should be awarded accordingly, judgment should be entered against Father for child support arrearages (which he allegedly stopped paying in April 2020), along with related relief, and Father should be ordered to pay one-half of MM's post-high school educational expenses.

Mother's points of error are best addressed in the context of her supporting arguments.

Mother argues, *inter alia*, that the Family Court erred when it deviated from the Guidelines as to all three children based on the allegation that Mother owed Father approximately $200,000 in "equity" in the marital residence, which includes Mother's Department of Hawaiian Homelands (**DHHL**) leasehold interest under the Hawaiian Homes Commission Act.

The Family Court split its consideration of the parties' motions based on the minority/majority status of the children. The court initially entered a March 20, 2023 Stipulated Order Regarding Private School and Findings and Order Granting in Part [the Motion to Suspend Support] (**Stipulation and Order re Minor Children**), which pertained to the minor children. On May 26, 2023, the Family Court entered an Order Granting in Part [the Motion to Suspend Support], which pertained to MM (**Order re MM**).

The stipulated part of the Stipulation and Order re Minor Children reflected the parties' agreement relating to the minor children's attendance at a private school on Oahu, including payment of private school expenses, time-sharing during school breaks, holidays and other scenarios, transportation expenses, graduation tickets, and song contest tickets. In addition, the Family Court made findings of "an exception to the [Guidelines]" based in part on the children's school-year residence on O'ahu, including tuition, room, board, and transportation mostly paid by the school. The findings also included that Father's gross income was $8,142.84 per month and Mother's gross income was $2,580 per month, as well as the following (**Paragraph h**):

> h. Since this Court issued its order in this matter on April 5, 2016, Mother has owed Father approximately $203,672.27, which represents the equity in the marital residence in which Mother presently resides. The marital residence is Hawaiian Homelands property requiring approval by [DHHL] before it can be sold and transferred to another person of native Hawaiian ancestry. Pursuant to multiple orders issued and filed by this Court, the marital residence was ordered to be sold and the proceeds therefrom awarded to Father. Mother has failed and refused to cooperate in the sale and transfer of the marital residence. Over Mother's objection, the sale and transfer of the property was

5

submitted to the DHHL for approval, but Mother enlisted the assistance of the Native Hawaiian Legal Corporation, which filed an action resulting in a temporary hold being placed on the sale and transfer of the marital residence. The sale and transfer of the marital residence is still pending approval by DHHL, therefore Father continues to be deprived of the monies owed to him as the equity in the marital residence.

No Guidelines Worksheets appear in the record in conjunction with the Stipulation and Order. The Family Court concluded:

> 4. <u>Child Support Orders.</u> Beginning August 1, 2022, Father shall pay child support in the amount he presently pays into each child's bank account – i.e., $100/month into each child's bank account. . . . An Order Terminating Child Support shall be filed forthwith. Father's child support arrearage, if any, shall be credited against the monies owed by Mother to Father, and the CSEA shall zero out any child support arrearage presently owed by Father to Mother.

On April 25, 2023, the Intermediate Court of Appeals (**ICA**) filed a Memorandum Opinion in CAAP-18-0000024 concluding, *inter alia*, that the Family Court had erred in failing to address Mother's contention that her leasehold interest in the Hawaiian Home Lands property was not marital property subject to transfer in this divorce proceeding. Thereafter, on May 11, 2023, the Family Court filed an Amended [Stipulation and Order re Minor Children] that was identical to the original [Stipulation and Order re Minor Children], except that it deleted Paragraph h and changed the last sentence of the order to state:

> The method of payment of Father's child support arrearage, if any, shall be determined once property division has ultimately been decided, and the CSEA shall zero out any child support arrearage presently owed from Father to Mother.

In the separate Order re MM, the Family Court, *inter alia*, found exceptional circumstances justified a deviation from the Guidelines, ordered Father to pay $250 per month directly to MM, ordered the parties to split 50/50 any educational expenses

6

not covered by financial aid, grants, or scholarship until age 23 provided MM remained a full-time student, and deferred the issue of child support arrearages.

The Consolidated and Superseding Order acknowledges the entry of the ICA's Memorandum Opinion, but is otherwise identical to the contents of the Amended Stipulation and Order re Minor Children and the Order re MM.

With respect to child support for the minor children, Mother argues that Paragraph h was a basis for the original Stipulation and Order re Minor Children that was simply removed after the ICA's Memorandum Opinion, and the Family Court erred where it failed to use the Guidelines and where it deviated from the Guidelines based on inadequate reasoning.

This argument has merit. The original Stipulation and Order re Minor Children was based on dual grounds. First, the Family Court found that an "exception" to the Guidelines was warranted by the extensive time KH and HM spent living at school away from Kauaʻi, the extraordinary support provided by their school, and the "equal time" with the parents when the children were not away at school. In addition, the Family Court's order that the child support be terminated and arrearages be "zeroed out" was clearly grounded in the Family Court's finding that Father was "deprived of monies owed to him" by Mother as a result of the ongoing dispute concerning Mother's leasehold interest in the the Hawaiian Home Lands property.

While the existence of exceptional circumstances may warrant a deviation from a hard-and-fast application of the child

support calculations, the Family Court is nevertheless <u>required</u> to use the Guidelines to calculate the support obligation, before deviating from it.  The Hawaiʻi Supreme Court has held:

> Pursuant to [Hawaii Revised Statutes (**HRS**)] § 571-52.5 and the Guidelines, the existence of exceptional circumstances may allow for deviation from the support amount calculated using the Guidelines Worksheet.  However, exceptional circumstances do not excuse a failure to use the Guidelines Worksheet. The language of HRS § 571-52.5 states that exceptional circumstances may "warrant departure," which presumes that the Guidelines Worksheet was utilized in the first place.  HRS § 571-52.5; <u>see</u> <u>also</u> <u>Matsunaga v. Matsunaga</u>, 99 Hawaiʻi 157, 167, 53 P.3d 296, 306 (App. 2002) (noting that "[p]resumptively, the amount of child support necessary . . . is the total amount computed according to [the Guidelines]" and considering whether exceptional circumstances warranted deviation); <u>Child Support Enf't Agency v. Mazzone</u>, 88 Hawaiʻi 456, 462, 967 P.2d 653, 659 (App. 1998) (in cases of alleged "exceptional circumstances," "[t]he amount calculated pursuant to [the Guidelines] is presumptively the amount that should be ordered and the party seeking a deviation from it has the burden of proof").  The Guidelines likewise permit "deviation" based on exceptional circumstances, and the Guidelines' requirement that the family court make factual findings on the "amount of support that would have been required as calculated using [the Guidelines Worksheet]" further demonstrates that even in cases of exceptional circumstances, the court must first calculate a support amount utilizing the Guidelines Worksheet.  Haw. State Judiciary, <u>2010 Hawaiʻi Child Support Guidelines</u> 11 (also noting that in cases of exceptional circumstances, the parent seeking deviation has the burden of proving that the circumstances "warrant a departure from the child support as calculated by the [Guidelines Worksheet]").  Therefore, even when "exceptional circumstances" exist within the meaning of HRS § 571-52.5 and the Guidelines, the family court is initially required to use the Guidelines Worksheet to determine the amount of the child support obligation.

<u>P.O. v. J.S.</u>, 139 Hawaiʻi 434, 443-44, 393 P.3d 986, 995-96 (2017).

Here, we conclude the Family Court erred in failing to use the Guidelines Worksheets to determine the child support obligation before deviating from it.  We note that the Guidelines include provisions and worksheets for equal time-sharing, and extensive time-sharing, the use of which allows calculations that reflect, *inter alia*, the difference between the parties' incomes, even if the Guidelines Worksheets operate as a starting place,

not the final calculation. While the minor children here may be away at school much of the year, they are nevertheless entitled to support during the other times of the year. Thus, the Family Court erred in terminating all child support, year-around. On remand, the Family Court is required to use the Guidelines to calculate the amount of monthly support before deviating from the support amount based on exceptional circumstances.

The Family Court deleted Paragraph h from the subsequent orders, including the Superseding and Consolidated Order. However, as argued by Mother, the Family Court did not otherwise change the child support obligations for the minor children and retained its order that "CSEA shall zero out any child support arrearage presently." Child support obligations and property division are separate matters, and neither Father nor the Family Court provided any authority supporting the offset of child support payments against property division obligations, or vice versa. Child support is for the benefit of the parties' children. Child support arrearages reflect a party's failure to provide court-ordered support for that party's children. We conclude that the Family Court erred in zeroing out child support arrearages, effectively excusing Father's child support obligations, and possibly reducing Father's ongoing support obligations, based on Mother's outstanding debt to Father for his interest in the marital assets. In addition, while the Family Court in effect found good cause for directing Father's payment of $100 per month to accounts accessible to HM and KM while they are away at school, this assessment must be done after (or as

part of), not in lieu of, child support calculations under the Guidelines.

As to the Family Court's order of support for MM, Section III.A.2.b. of the Guidelines provides:

> If the [Family Court] orders support for adult children, then the [Family Court] must order the amount as calculated by the worksheets unless there are exceptional circumstances that warrant a deviation.

As discussed above, the supreme court has held that the Family Court is required to use the Guidelines to calculate the amount of monthly support before deviating from the support amount based on exceptional circumstances. In this case, the Family Court's findings appear to support the order for MM's parents to provide support of MM, as well as a possible deviation for MM based on consideration of "both parents' incomes and resources, and [MM's] reasonable expenses, income, and resources." See Guidelines Section III.A.2.c. We nevertheless conclude that the Family Court erred in its calculation of the support obligation for MM because it did not calculate support based on the Guidelines Worksheet, prior to ordering a deviation from that calculation.[3]

Finally, Mother argues that the Family Court erred when it overruled her objections to the cross-examination of Mother about her written financial statements. However, Mother cites no rule of evidence or other authority barring such questioning. Essentially, Mother argues that it caused the court to unfairly conclude her representations concerning her financial matters

---

[3] The Family Court's findings do not provide any explanation or support for the specific amount of $250 that Father was ordered to provide to MM.

were not credible, while allowing Father to simply give oral testimony concerning his income, without submitting updated written financial statements.  These are separate issues.  Mother has failed to demonstrate error with respect to the cross-examination and we will not disturb the Family Court's determination that Mother's testimony that she gave MM $1,000 per month was not credible in light of, *inter alia*, Mother's testimony that her gross monthly income was $3,200.  Mother has not properly raised any challenge to the Family Court's allowance of Father's testimony regarding his income.  Accordingly, we conclude that this point of error is without merit.

For these reasons, the Family Court's June 30, 2023 Consolidated and Superseding Order is vacated, and this case is remanded to the Family Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, February 27, 2025.

On the briefs:

Kai Lawrence,
for Defendant-Appellant.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge